*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 77**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

A. S.,
*Appellant,*

*v.*

R. S.,
*Appellee.*

No. 20151023
Filed November 14, 2017

On Certification from the Court of Appeals

Fourth District, Provo Dep't
The Honorable Fred D. Howard
No. 084401555

Attorneys:

F. Lavar Christensen, Draper, for appellant

Ronald D. Wilkinson, Nathan S. Shill, Orem,
Sara Pfrommer, Salt Lake City, for appellee

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1    A.S. (Father) appeals the district court order awarding R.S. (Mother) attorney fees and costs for the underlying juvenile court proceedings. We do not reach the merits of this case because we hold that we lack jurisdiction.[1] Mother is awarded reasonable attorney

---

[1] *See infra* ¶ 35 n.12.

fees and costs on appeal. We remand this case to the district court for a determination of those fees and costs.

## BACKGROUND

¶2    Mother and Father petitioned for divorce in the district court in 2008. In 2012, Father petitioned to terminate Mother's parental rights based on unsubstantiated allegations of her sexual abuse of their two children. Mother counter-petitioned the court to terminate Father's parental rights or to award her physical custody of the children. As a result of the exclusive original jurisdiction of the juvenile court over matters concerning "the termination of the legal parent-child relationship," Utah Code section 78A-6-103(1)(g), and "mak[ing] a finding of substantiated, unsubstantiated, or without merit," *id.* section 78A-6-103(6), on matters of "a severe type of child abuse or neglect," *id.* section 78A-6-323(1), the juvenile court heard the petition rather than the district court. The juvenile court and the district court maintained concurrent jurisdiction under *id.* section 78A-6-104 until the exclusive original jurisdiction of the juvenile court was extinguished. *Id.* § 78A-6-104(1)(b). ("The district court or other court has concurrent jurisdiction with the juvenile court: . . . with regard to proceedings initiated under Part 3, Abuse, Neglect, and Dependency Proceedings, or Part 5, Termination of Parental Rights Act."). Therefore, while the district court had continuing jurisdiction over the divorce proceedings, including a determination "of support, custody, and parent-time . . . incidental to the determination of a cause in district court," the juvenile court could "change the custody . . . support, parent-time, and visitation rights previously ordered in the district court as necessary to implement the order of the juvenile court for the safety and welfare of the child. . . . so long as the jurisdiction of the juvenile court continues." *Id.* § 78A-6-104(3)–(4)(b). "The juvenile court has jurisdiction over questions of custody, support, and parent-time, of a minor who comes within the court's jurisdiction . . . ." *Id.* § 78A-6-104(5). The juvenile court denied Father's petition to terminate Mother's parental rights, granted Mother custody of the minor children, cited both Father and J.S. (Stepmother) for contempt, and ordered Father and Stepmother to pay all legal fees, costs, and expenses incurred by Mother.

¶3    Father and Stepmother prematurely appealed the juvenile court's order before it became a final order, because the award for attorney fees and costs had not yet been reduced to a judgment. *See DFI Props. LLC v. GR 2 Enters. LLC*, 2010 UT 61, ¶ 20, 242 P.3d 781 (2010) ("This case represents another in the line of cases where we have held that a judgment awarding attorney fees in a yet-to-be-

determined amount is not final for purposes of appeal. . . . [and] we lack jurisdiction over appeals from such judgments . . . ."). But the court of appeals, apparently unaware that the order appealed from was not a final order, failed to dismiss the notice of appeal and instead issued an opinion affirming "[t]he juvenile court's order . . . in all respects except for the determination of contempt," which it vacated because of lack of notice and hearing and remanded to the juvenile court for a hearing on the contempt allegations. *In re E.S. & N.S.*, 2013 UT App 222, ¶ 9, 310 P.3d 744. Because the time to petition for writ of certiorari on the court of appeals' opinion has lapsed, the parties are foreclosed from arguing that the court of appeals lacked jurisdiction, and we treat it as a final judgment.[2]

¶4 During the pendency of the first appeal, the juvenile court continued to have jurisdiction over, and hold status hearings regarding, the welfare of the children. On remand from the court of appeals, the juvenile court held contempt proceedings on December 13, 2013, issuing its contempt order against Father and Stepmother on January 23, 2014. A child welfare status hearing was held on January 16, 2014 with a follow-up phone conference on February 20, 2014. The juvenile court, having determined that the outstanding motions regarding the child welfare case were resolved as of its March 17, 2014 order, released the Guardian ad Litem from the matter and terminated the juvenile court's jurisdiction, noting that a separate order regarding the contempt charges was issued and that

---

[2] Although the proper action for the court of appeals in this case would have been to reject the appeal for lack of jurisdiction because the judgment was not final, there is now no remedy for the error. We have held that "jurisdiction is a threshold issue, which can be raised at any time and must be addressed before [turning to] the merits of other claims." *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 10, 342 P.3d 224 (alteration in original) (citation omitted). "Generally speaking, the [final judgment] rule prevents a party from prematurely appealing a non-final judgment, and thereby preserves scarce judicial resources." *Loffredo v. Holt*, 2001 UT 97, ¶ 11, 37 P.3d 1070. However, the ability to raise questions of jurisdiction expires after the last available opportunity to appeal final judgments on a particular set of issues has passed. This comports with our *res judicata* doctrine precluding claims after "a 'final judgment on the merits in [a] previous action.'" *Jordan Constr., Inc. v. Fed. Nat'l Mortg. Ass'n*, 2017 UT 28, ¶ 43, ___ P.3d ___ (alteration in original) (citations omitted).

the outstanding order for attorney fees would be referred to the district court for entry of a judgment, because that court now had exclusive jurisdiction. *See* UTAH CODE § 78A-6-103 to -104. The findings and order of the juvenile court are "binding *on the parties to the divorce action* as though entered in the district court" when "a copy . . . has been filed with the district court." *Id.* § 78A-6-104(4)(c) (emphasis added). However, once the district court again has exclusive continuing jurisdiction, the district court is able to make changes to those orders to ensure the appropriate needs of the children and the parties are met. *See Id.* § 30-3-5(3)–(4) ("The [district] court has continuing jurisdiction to make subsequent changes or new orders for the custody of the children and their support, maintenance, health, and dental care, and for distribution of the property and obligations for debts as is reasonable and necessary. . . . Child support, custody, visitation, and other matters related to children born to the mother and father after entry of the decree of divorce may be added to the decree by modification.").

¶5   As jurisdiction over the case had been transferred to the district court, Mother filed a motion for a judgment on the attorney fees and costs ordered by the juvenile court, with accompanying memorandum and affidavit. Father opposed the motion, arguing that the court did not have authority to award attorney fees and costs, but not addressing the specific validity of the amount requested. The case first came before a commissioner, who ended the proceedings when Father's counsel began to argue the lack of authority of the juvenile court to award attorney fees. The commissioner correctly noted that a juvenile court judge, with the equivalent authority of a district court judge, had made the ruling and that the commissioner did not have authority to change the ruling of "a higher judicial authority . . . [that says Mother] gets attorney's fees." "[A commissioner] cannot decide that a higher judicial authority got it wrong." The matter then came before the district court, which granted Mother's motion for attorney fees, found that the fees requested were reasonable, and entered a judgment in the amount of $180,780.47 against Father. This judgment and order was dated April 6, 2015.

¶6   Father then had 14 days[3] to file a motion for a new trial under Utah Rule of Civil Procedure 59. UTAH R. CIV. P. 59(b) (2014)

---

[3] Prior to the 2014 amendment of Utah Rule of Civil Procedure 59, parties only had 10 days to file a motion. It was amended again in 2016 to allow 28 days to file a rule 59 motion.

("A motion for a new trial shall be served not later than 14 days after the date of entry of the judgment."). Thus, the deadline for filing a rule 59 motion in this case was April 20, 2015. Father admits in his brief that "[o]n April 20–21, 2015" he filed "documents associated with a U.R.C.P. Rule 59 motion." In the district court's order denying Father's rule 59 motion, the court correctly stated that the Father's motion was filed on April 21, 2015. Father attempts to overcome this timeliness issue in his brief to this court with the following explanation: "(NOTE: That date [April 21st] is in error. It was filed electronically the day before.)" However, the docket shows that although the memorandum and its exhibits were filed on April 20, 2015, just before midnight, the electronic time stamp shows that the rule 59 motion along with several other supporting documents were filed just after midnight on April 21, 2015, ranging from three to sixteen minutes after midnight.

¶7 Because counsel for Father was not able to account for this procedural defect at oral arguments, we ordered supplemental briefing from both parties regarding the timeliness of the rule 59 motion and whether, if the rule 59 motion was untimely, the filing of the memorandum was sufficient to confer jurisdiction. Father did not meet his burden of persuasion in his supplemental brief, and we therefore hold that we do not have jurisdiction to rule on the merits.

## STANDARD OF REVIEW

¶8 The timeliness of a rule 59(e) motion is a matter of law reviewed for correctness. A district court judge "err[s] as a matter of law in granting [an] untimely rule 59 motion." *Sanpete Am., LLC v. Willardsen*, 2011 UT 48, ¶ 66, 269 P.3d 118. Whether jurisdiction to reach the merits of an appeal "exists is a question of law which we review for correctness, giving no deference to the court below." *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572. Jurisdiction is a question that may be raised by the court or a party at any time during the proceedings. *See Workers Comp. Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶ 8, 266 P.3d 792 ("Because we agree that [Father] did not file a timely notice of appeal, we are without jurisdiction to address the issues . . . raise[d] and therefore dismiss this appeal."). This court has jurisdiction to hear this appeal under Utah Code section 78-3-102(3)(b).

## ANALYSIS

¶9 Because the jurisdictional issue is controlling in this case, we will only address the rule 59 motion filed by Father and its lack of timeliness, thereby divesting this court of jurisdiction. *See State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶ 7, 99 P.3d 818 ("Because this case is

fully resolved by our analysis of the jurisdiction question, we do not address the [case on its merits]."). We first examine the rules that govern electronic filing and the rules' requirements. We then discuss the untimely filing of the Rule 59 motion in this case and determine that we lack jurisdiction to address the merits.

## I. THE UTAH TRIAL COURT SYSTEM ELECTRONIC FILING GUIDE ESTABLISHES THE FILING DATE AND TIME OF DOCUMENTS

¶10 The Judicial Council has mandated that all documents in district, juvenile, and justice courts be filed electronically, with rare exceptions.[4] *See* UTAH CODE JUD. ADMIN. Rules 4-503 (district civil, probate, and domestic cases required as of April 1, 2013); 4-603 (district criminal cases required as of March 31, 2014); 4-901 (juvenile courts required as of December 1, 2015 for existing cases and as of August 1, 2016 for new cases); and 9-302 (justice courts required as of January 1, 2017). The Judicial Council has also provided a guide to assist attorneys and courts with these transitions and establish guidelines and requirements for the e-filing system. *See* STATE OF UTAH JUDICIAL COUNCIL, UTAH TRIAL COURT SYSTEM ELECTRONIC FILING GUIDE (2013) [hereinafter E-FILING GUIDE].

¶11 Utah Code of Judicial Administration Rule 4-503(1) (2013) requires that "pleadings and other papers filed in civil cases in the district court on or after April 1, 2013 shall be electronically filed using the electronic filer's interface."[5] Additionally, under its "authority for establishing and representing the official position of the judiciary on issues within the jurisdiction of the Council," *id.* 1-102(2), the Judicial Council has published the *e-Filing Guide* to set requirements and assist attorneys with electronic filing. "Electronic filing is subject to the rules of the Utah Judicial Council and the Utah Supreme Court. In the event of a conflict between the electronic filing system requirements and the rules of the Judicial Council or the Utah Supreme Court, the rules of the council or court will prevail." E-FILING GUIDE, *supra* ¶ 10, at 2. The *e-Filing Guide* defines the official filing date: "The filing date and time is not when the filer

---

[4] These exceptions include "[a] self-represented party who is not a lawyer" and "[a] lawyer whose request for a hardship exemption from this rule has been approved by the Judicial Council." UTAH CODE JUD. ADMIN. Rule 4-503(2)(A)–(B).

[5] The current version, rule 4-503(1) (2016), contains the same language. *See supra* n.4 for exceptions to this rule.

submits the document to their Service Provider. For purposes of electronic filing, the file date will be the date and time recorded when the filing was received and was posted by the court's electronic filing manager." *Id.* at 3. The *e-Filing Guide* also states that technical failures will not excuse a late filing. *Id.* ("The filer is responsible for a timely filing and should take appropriate action if the electronic filing system is inoperable or fails to notify the filer that the court has received the filing.").

¶12 The Board of District Court Judges published the *E-filing in Utah's State Courts: Frequently Asked Questions for Attorneys* to answer procedural questions regarding e-filing. STATE OF UTAH DISTRICT COURTS, E-FILING IN UTAH'S STATE COURTS: FREQUENTLY ASKED QUESTIONS FOR ATTORNEYS (2013) [hereinafter E-FILING FAQS]. This document further clarifies that "if the efiling system is temporarily unavailable or [the] filing fails because of a technical problem," it will not excuse a late filing. *Id.* at 2–3. "The filer is responsible for a timely filing. Best practice is to allow adequate time to file a time-sensitive document." *Id.* The *e-Filing FAQs* also recommends that "[i]f a technical failure of the efiling system interferes with a case deadline, [the filer] may wish to file a stipulation or motion," recommending that the filer "[c]ontact the efiling specialist at the court for direction." *Id.*

## II. THE RULE 59 MOTION TO ALTER OR AMEND WAS NOT TIMELY FILED

¶13 It is undisputed that the rule 59 motion in this case was filed after the deadline established by the electronic filing system docket. The Judicial Council has placed the burden of ensuring timely filing on the filer. "The filer is responsible for a timely filing and should take appropriate action if the electronic filing system is inoperable or fails to notify the filer that the court has received the filing." E-FILING GUIDE, *supra* ¶ 10, at 3.

¶14 Father argues that the timely filed memorandum in support of his untimely rule 59 motion "is a 'de facto' equivalent" that "has a sufficient caption and label to fairly and equitably meet the appropriate standard." "If the Rule 59 motion was somehow to be treated as untimely, the prior filing of the supporting memorandum and all that it expressed, represents and incorporates, is sufficient to confer appellate jurisdiction." However, the only legal support he offers for deeming the memorandum as a motion is a line of cases concerning motions to reconsider that was abrogated by *Gillett v. Price*, 2006 UT 24, 135 P.3d 861.

¶15 Additionally, Father argues that his untimely rule 59 motion should be considered "minimal, excusable and harmless error, because it was "submitted in good faith" and was "excusable neglect," which is "a flexible standard." Unfortunately, he supports this theory with cases that do not address the mandate in Utah Rule of Civil Procedure 6(b)(2) that divests the district court of authority to allow an untimely rule 59 motion because of excusable neglect. The plain language in rule 6(b)(2) gives no discretion to the district court in deciding whether to accept an untimely filed rule 59 motion. Therefore, his rule 59 motion cannot be remedied by an equitable plea of excusable neglect.

¶16 Father's exclusive reliance on cases that are easily distinguishable or have been abrogated instead of citing valid legal authority and his failure to address rule 6(b)(2)'s proscription on a district court's ability to accept untimely rule 59 motions renders his briefing on the relevant issues of the supplemental brief inadequate. "Appellants have the burden to clearly set forth the issues . . . and to provide reasoned argument and [valid] legal authority." *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2013 UT 24, ¶ 16, 309 P.3d 201 (*citing* UTAH R. APP. P. 24(a)(9)); *see also 2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC*, 2017 UT 29, ¶ 30, ___ P.3d ___ ("[I]t is not the size of an argument that matters. Some parties adequately brief an argument in a well-crafted paragraph. Others manage to inadequately brief an argument in fifty pages.") Arguments, like gardens, take work, and a party who hopes to prevail on appeal should be willing to dig in the dirt and not expect that opposing counsel or the court will do that work for them.

*A. The Timely Filed Memorandum in Support of the Rule 59 Motion to Alter or Amend Is Insufficient to Cure the Late Filing of the Rule 59 Motion*

¶17 Father seeks to use the timely filed memorandum as a substitute for the untimely filed "formal" rule 59 motion. This we cannot do because the plain language of rule 59 requires that "*a motion* to alter or amend the judgment . . . be filed no later than 28 days after entry of judgment." UTAH R. CIV. P. 59(e) (2014) (emphasis added). Therefore, a timely memorandum in support of an unfiled motion will not act as a substitute for an untimely filed rule 59 motion. Father's argument that Utah Rule of Civil Procedure 7 was amended to require merger of the motion and the memorandum at a later date than when he filed his rule 59 motion is also of no avail, nor is his claim that rule 61 grants him leeway if the untimely filing of the motion was due to "harmless error."

¶18 Motions are defined in the Utah Rules of Civil Procedure. UTAH R. CIV. P. 7(b)(1) (2014)[6] (defining a written motion as "[a]n application to the court . . . [that] shall . . . state succinctly and with particularity the relief sought and the grounds for the relief sought"). The requirements for initial memoranda are listed separately.

> All motions, except uncontested or ex parte motions, shall be accompanied by a supporting memorandum. . . . Initial memoranda shall not exceed 10 pages of argument without leave of the court. . . . The court may permit a party to file an over-length memorandum upon ex parte application and a showing of good cause. . . . A memorandum with more than 10 pages of argument shall contain a table of contents and a table of authorities with page references. A party may attach as exhibits to a memorandum relevant portions of documents cited in the memorandum, such as affidavits or discovery materials.

UTAH R. CIV. P. 7(c)(1)–(3) (2014).[7] These definitions and requirements use "shall," indicating that they are mandatory.

¶19 Rule 7 clearly distinguishes between a motion and a memorandum. Motions are required to be a succinct document, stating "with particularity the relief sought and the grounds for the relief sought." UTAH R. CIV. P. 7(b)(1) (2014). Moreover, a rule 59 motion also requires a separate, supporting memorandum. UTAH R. CIV. P. 7(c)(1) (2014). Here, the only timely filed document was the supporting memorandum. Without a timely filed motion, the supporting memorandum is of no value. We note that even if the

---

[6] Rule 7 was substantially altered in November 2015, with additions in 2017 "addressing limits on orders to show cause. . . . initiated by parties" and "clarify[ing] the discretion the court retains to manage its docket." UTAH R. CIV. P. 7(b)(1) (2017) advisory committee's note. We will refer to the 2014 version of rule 7 in this opinion as that was the version of the rule in operation at the time of the rule 59 motion under consideration.

[7] Sections (c)(3)(A) and (c)(3)(B) are related to memoranda supporting and opposing summary judgment and are not relevant or included. However, sections (c)(3)(C) and (c)(3)(D) are relevant and the language is included here.

motion had been timely filed, the acceptance of the supporting memorandum would have been at the court's discretion because Father filed an overlength memorandum without seeking leave of the court. The memorandum was 20 pages instead of the 10 allowed. S*ee* UTAH R. CIV. P. 7(c)(2) (2014). And, notwithstanding its overlength, it did not contain the mandatory "table of contents and . . . table of authorities with page references" required for overlength memoranda. UTAH R. CIV. P. 7(c)(3)(C) (2014).

¶20 We have held that where a party *timely filed* an insufficient *motion* that is barred from untimely filing by rule 6(b)(2), the district court does have discretion to allow that party "to supplement the originally insufficient motion," because "sufficiency is not a logically necessary component of timeliness." *Menzies v. Galetka*, 2006 UT 81, ¶ 68, 150 P.3d 480; *see also Blosch v. Natixis Real Estate Capital, Inc.*, 2013 UT App 214, ¶¶ 15–18, 311 P.3d 1042. However, these cases dealt with timely filed, albeit insufficient, *motions* and not timely filed memoranda in support of untimely filed motions. In the instant case, Father did not file a timely motion, sufficient or insufficient, and district courts do not have discretion to allow a party to supplement an untimely motion barred by rule 6(b)(2).

¶21 Historically, we have held that an "incorrect title placed upon the pleading was not a bar," *Watkiss & Campbell v. Foa & Son*, 808 P.2d 1061, 1064 (Utah 1991), and allowed district courts to treat motions to reconsider as the appropriate motion that would toll the time to appeal. *See Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 9, 20 P.3d 388 ("[I]t is the substance, not the labeling, of a motion that is dispositive in determining the character of the motion."); *Watkiss*, 808 P.2d at 1064–65. (An incorrectly titled pleading is not necessarily a bar, and where the court has treated it as a motion that will toll the time to file an appeal, "the time period to file an appeal beg[ins] to run . . . when the judge sign[s] the order of denial"); *Gallardo v. Bolinder*, 800 P.2d 816, 817 (Utah 1990) ("If the nature of the motion can be ascertained from the substance of the instrument, we have heretofore held that an improper caption is not fatal to that motion." (citations omitted)). Father relies heavily on these cases for support of the idea that "substance over form is controlling." Unfortunately for him, this entire line of cases was abrogated by *Gillett* eleven years ago, when we stated "that it [was] time this practice [came] to an end." 2006 UT 24, ¶¶ 7–8 ("We . . . hold that, regardless of the motion's substance, postjudgment motions to reconsider and other similarly titled motions will not toll the time for appeal because they are not recognized by our rules."); *accord Radakovich v. Cornaby*, 2006 UT App 454, ¶¶ 5–6, 147 P.3d 1195.

¶22 Notwithstanding that "[t]he filing of postjudgment motions to reconsider ha[d] become a common litigation practice," *Gillett*, 2006 UT 24, ¶ 1, despite not being authorized by the Utah Rules of Civil Procedure, we determined that we would no longer "treat[] motions to reconsider as rule-sanctioned motions based on the substance of the motion," *id.* ¶ 8. "Motions to reconsider are not sanctioned by our rules and therefore do not toll the time for appeal under any circumstance." *Id.* ¶ 5. While *Gillett* is instructive, its particular bar applies specifically to "postjudgment motions and other similarly titled motions," which are not at issue in this case concerning a motion for a new trial under Utah Rule of Civil Procedure 59. *Id.* ¶¶ 7–8 ("We . . . hold that, regardless of the motion's substance, postjudgment motions to reconsider and other similarly titled motions will not toll the time for appeal because they are not recognized by our rules."). Father's argument that we should accept his untimely filed rule 59 motion based on the cases regarding motions to reconsider that *Gillett* abrogated is inapt.

¶23 "In our system, the rules provide the source of available relief. They '[are] designed to provide a pattern of regularity of procedure which the parties and the courts [can] follow and rely upon.'" *Id.* ¶ 8 (alterations in original) (citation omitted). "The rules of court are intended to refine and explain the procedure set forth in the statutory scheme . . . ." 21 C.J.S *Courts* § 166 (2017). *Gillett* requires that "when a party seeks relief from a judgment, it must turn to the rules to determine whether relief exists, and if so, direct the court to the specific relief available." 2006 UT 24, ¶ 8. Despite Father's assertions to the contrary, "the form of a motion does matter," *id.*, insofar as improper form often leads to insufficient substance.[8] "'[T]he form of the motion does matter' when determining whether the motion tolls the time for appeal 'because it directs the court and litigants to the specific, and available, relief sought.'" *Workers Comp. Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶ 11, 266 P.3d 792 (citation omitted). Therefore, Father's timely filed memorandum, even were it to be accepted by the court despite its structural and procedural flaws, cannot be a substitute for a timely filed rule 59 motion: not only was its form improper, being titled and structured as a supporting memorandum, but also it failed in

---

[8] We do not hold that any clerical error or defect in form would render a motion invalid, but the substance of the filed document must be in accord with the substantive requirements of the intended motion.

substance to succinctly state "with particularity the relief sought and the grounds for the relief sought." UTAH R. CIV. P. 7(b)(1) (2014); s*ee also Id.* R. 6(b)(2); UTAH R. APP. P. 4(b).

¶24 Father's assertion that the amendment of rule 7(c)(1) seven months later renders his error "innocent, harmless and insignificant" is without merit. He cannot rely on a rule that was amended after his untimely filing. His obligation was to file within the constraints of the Utah Rules of Civil Procedure as they existed at the time of filing. Future amendments do not remedy past failures. Furthermore, his memorandum would still fail to qualify as sufficient even under the new scheme. The 2015 version of rule 7 requires that "[a] request for an order must be made by motion. The motion . . . must state the relief requested, and must state the grounds for the relief requested." UTAH R. CIV. P. 7(b) (2015). Nor does it comply with requirements of form or substance detailed in rule 7(c)(1). Father also attempts to shore up his late filing by citing the harmless error standard in Utah Rule of Civil Procedure 61. While this rule provides that courts should "disregard any error or defect" that "does not affect the substantial rights of the parties" during proceedings, this rule is not intended to provide lawyers grounds to seek "a new trial or otherwise disturb[] a judgment or order" by a finding that a mistake was "harmless error." *Id.* R. 61. Rather, it allows for the remedy of "harmless error" in these circumstances only when "refusal to take such action appears to the court inconsistent with substantial justice." *Id.* Regardless, Utah Rule of Civil Procedure 6(b)(2) forecloses remedying a late rule 59(e) motion by a court's finding the tardiness to be "harmless error."

¶25 In summary, the timely filed memorandum is not sufficient in form or substance to substitute for a rule 59(e) motion. It did not "state succinctly and with particularity the relief sought and the grounds for the relief sought." UTAH R. CIV. P. 7(b)(1) (2014). A subsequent amendment of a procedural rule regarding the filing of motions does not affect the procedural requirements that existed at the time a motion is filed. Regardless, Father's memorandum would fail to meet the requirements of the amended version of rule 7 as well as the 2014 version of rule 7. An untimely rule 59 motion is not "harmless error" under rule 61 and is specifically prohibited from being considered by the district court by Utah Rule of Civil Procedure 6(b)(2).

*B. Utah Rule of Civil Procedure 6(b)(2) Prohibited the
District Court from Extending Time to File a
Motion Under Utah Rule of Civil Procedure 59(e)*

¶26 Utah Rule of Appellate Procedure 4(b)(1) extends the 30-day time to file an appeal to 30 days from the "entry of the dispositive order" of any of several listed timely filed motions. *See Blosch*, 2013 UT App 214, ¶ 17 ("Tolling of the time to appeal under rule 4 is triggered when a party 'timely files in the trial court' one of the motions enumerated under rule 4(b), such as a rule 59 motion for a new trial." (citation omitted.)). This extension applies to Utah Rules of Civil Procedure 50(b) ("motion for judgment [notwithstanding the verdict]"); 52(b) ("motion to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted"); 59(e) ("motion to alter or amend the judgment"); 59(b) ("motion for a new trial"); 60(b) (motion for relief "from a judgment, order, or proceeding" that occurs because of "mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc."(UTAH R. CIV. P. 60(b)); and 73 ("motion or claim for attorney fees").[9] UTAH R. APP. P. 4(b)(1). The court "*must not* extend the time to act under" the civil procedure motions that extend the time to appeal under Utah Rule of Appellate Procedure 4(b)(1). UTAH R. CIV. P. 6(b)(2) (emphasis added).

¶27 In this case, Father filed a rule 59 motion to alter or amend the judgment, but he filed it after the deadline of midnight on April 20, 2015. Father quotes *Arches Condominium Association v. Robinson*,[10] for the proposition that "trial courts may consider an untimely post-trial motion, *so long as it still has jurisdiction*, absent an objection from the opposing party that sets forth how it will be prejudiced . . . ." 131 A.3d 122, 129 (Pa. Commw. Ct. 2015) (emphasis added). This argument fails for two reasons. Not only is the decision of a lower court in Pennsylvania not binding, it is not even persuasive or relevant in this case. Moreover, within the quotation itself, the opinion requires that the trial court "still ha[ve] jurisdiction." In the

---

[9] It also applies to "[a] motion for a new trial under Rule 24 of the Utah Rule of Criminal Procedure." UTAH R. APP. P. 4(b)(1)(G). However, the rules of criminal procedure are not at issue in this case.

[10] A case decided by a court he repeatedly mistakenly refers to as the "Pennsylvania Supreme Court." He also fails to provide pincites for most of the quotations or citations from this case and others in his brief.

present case, the district court was divested of jurisdiction by Utah Rule of Civil Procedure 6(b)(2). "A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d) and (e), and 60(c)." UTAH R. CIV. P. 6(b)(2). In *Arches*, the trial court had not yet made a final judgment, and so "the trial court, acting in its discretion, [could] accept[] the untimely post-trial motion[]," 131 A.3d at 129 requesting the court "to reconsider awarding . . . attorney's fees," *id.* at 126. In the present case, the district court had already issued a final, appealable judgment and did not have discretion to consider an untimely rule 59 motion. *See* UTAH R. CIV. P. 6(b)(2).

¶28 Father also cites *Burdick v. Horner, Townsend & Kent, Inc.* for the proposition that the district court did not err as a matter of law in ruling on the merits of the untimely rule 59 motion. 2015 UT 8, 345 P.3d 531. In *Burdick*, before a final judgment was entered, the United States Supreme Court decided a case that might "impact the grant of summary judgment against the [plaintiffs]. The court asked the parties to brief the [statute of limitations] issue." *Id.* ¶ 12. The plaintiffs filed a motion for reconsideration that addressed not only the [statute of limitations] issue on which the court asked for briefing, but also "seeking a review of all claims previously granted summary judgment and raising new claims for the first time." *Id.* ¶ 13. The district court refused to admit new evidence that could have been entered during the initial proceedings for summary judgment, but did modify its order "to read that there were genuine issues of material fact regarding the statute of limitations." *Id.* ¶¶ 15–16. In our review of the *Burdick* court's ruling, we restated that "motions to reconsider are not recognized anywhere in either the Utah Rules of Appellate Procedure or the Utah Rules of Civil Procedure," and held that "'trial courts are under no obligation to consider motions for reconsideration' and 'any decision to address or not to address the merits of such a motion is highly discretionary.'" *Id.* ¶ 34 (citations omitted). Once again, a final judgment had not been entered in *Burdick* when the motion for reconsideration was filed, and the trial court still had jurisdiction, distinguishing it from the present case. Therefore, the court was not barred in *Burdick* from considering the merits according to its discretion. However, in the case before us, Utah Rule of Civil Procedure 6(b)(2) deprived the district court of jurisdiction to hear the untimely rule 59 motion. This was not an abuse of discretion because the court did not have discretion to accept the untimely motion. This was error.

¶29 Next, Father cites a United States Supreme Court case, *Pioneer Investment Services, Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), to delineate factors to be considered when analyzing "excusable neglect." He "submits that these [factors] and

other applicable considerations are fully met and satisfied." Under Utah Rules of Civil Procedure, a "court may, for good cause, extend the time . . . . on motion made after the time has expired if the party failed to act because of excusable neglect," *except* that "[a] court *must not* extend the time to act under Rule[] . . . 59(e)." Utah R. Civ. P. 6(b) (emphasis added). Therefore, "excusable neglect" is not available as a remedy for an untimely rule 59 motion, and *Pioneer Investment Services* is inapplicable.

¶30 This court has held that an untimely rule 59(e) motion is a complete bar for the district court to do anything other than to deny the motion. *See Sanpete Am., LLC v. Willardsen*, 2011 UT 48, ¶ 67, 269 P.3d 118 ("A district court 'may not extend the time for taking any action under [rule 59(e)] except to the extent and under the conditions stated in [the rule].' Rule 59(e) contains no conditions extending the timeliness of service beyond the ten-day limit. Consequently, when a rule 59 motion is served later than ten days after entry of judgment, 'the trial court's only alternative is to deny the motion.'"[11] (alterations in original) (citations omitted)); *see also Burgers v. Maiben*, 652 P.2d 1320, 1321 (Utah 1982) ("When such an untimely motion is made, the trial court's only alternative is to deny the motion"). An untimely rule 59(e) motion will not toll the deadline for filing an appeal. *See Burgers*, 652 P.2d at 1321 ("An untimely motion for a new trial has no effect on the running of the time for filing a notice of appeal."); *accord Garcia-Velazquez v. Frito Lay Snacks Caribbean*, 358 F.3d 611 (1st Cir. 2004) (basing its opinion on Federal Rules of Civil Procedure (which our Utah Rules of Civil Procedure mirror) and holding "that a late-filed motion under rule 59(e) did not toll the running of the notice of appeal period even though the district court adjudicated the motion on its merits").

¶31 Absent a timely-filed rule 59 motion, the district court lacked the authority to rule on the merits of the untimely rule 59 motion. The district court's order of October 27, 2015 is thus void and the judgment and order of April 6, 2015 is the final judgment on the underlying matter of attorney fees and costs.

### III. THIS COURT LACKS JURISDICTION TO RULE ON THE MERITS OF THIS CASE

¶32 Father argues that this court has jurisdiction because the trial court properly exercised its discretion in considering the

---

[11] The ten-day limit was changed to 14 days in 2014, and then to 28 days in 2016.

untimely rule 59 motion and because neither the trial court nor Mother raised the issue of jurisdiction in the proceedings below. Both arguments fail.

¶33 Father declares that "[i]t is a very significant fact and equitable element of this issue and case that the district court itself identified and found harmless and immaterial the alleged untimeliness." According to his theory, "court[s] ha[ve] inherent authority to address prior misstatements in its rulings at any time and no matter how the error might come to its attention. . . . to maintain and protect the integrity of the courts." Father cites *Burdick* in support of his theory that trial courts have discretion whether to consider a motion. *Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 50, 345 P.3d 531 (noting that "trial courts are under no obligation to consider motions for reconsideration," but "if a trial court decides, in its discretion, to address the merits of a claim for the first time in the motion to reconsider, that claim is preserved"). Because the district court in the present case allegedly used its discretion in allowing and considering the untimely rule 59 motion, Father argues it was also "preserved," and as a result the notice of appeal was timely.

¶34 He also claims that because "[t]here was no objection by Appellee or the district court," this court should "find no abuse of discretion in the district court accepting and ruling upon [the] Rule 59 Motion." To buttress his argument, he cites to *Warner v. Warner*, 2014 UT App 16, 319 P.3d 711, and to *Barnard v. Wassermann*, 855 P.2d 243, 249 (Utah 1993) ("It is undoubtedly true that courts of general and superior jurisdiction possess certain inherent powers not derived from any statute. . . . Such inherent powers of courts are necessary to the proper discharge of their duties." (citation omitted).

¶35 But Father's arguments are ineffective. Utah Rule of Civil Procedure 6(b)(2) strips a district court of authority to hear an untimely rule 59 motion, operating as a bar that prevents the district court from considering the motion. Further, neither the district court's ruling on the untimely rule 59 motion, nor the lack of objection by Mother in the underlying procedure, constitute a proper waiver. The mandate of rule 6(b)(2) cannot be waived. It is not open to discretion but is required, and failure to follow its mandate constitutes error. It is irrelevant whether the district court treated the motion as timely filed, because the issue before us is whether Father appealed the district court's final order as required by Utah Rule of

Appellate Procedure 4(b)(1)(C), thereby establishing the jurisdiction of this court.[12]

---

[12] We note that the terminology used to state which form of jurisdiction is revoked by failure to comply with rules of procedure has been imprecise in our precedent. The federal courts, in which jurisdiction is an even more complicated issue have noted the difficulty in categorizing jurisdiction. "As for 'jurisdiction': the word is a many-hued term. Courts may have jurisdiction for some purposes but not others." *United States v. Wey,* 895 F.2d 429, 431 (7th Cir. 1990) (citation omitted). Similarly, state courts across the nation have grappled with the precise terminology to use. *See, e.g., Zajac v. Trail Cty Water Res. Dist.,* 881 N.W.2d 666, 668 (Mem) (N.D. 2016) ("We have recognized '[t]imely filing of an appeal from a decision of a [local governing body] is mandatory to invoke a district court's appellate subject matter jurisdiction over the appeal.'" (alterations in original) (citation omitted); *State v. Maldonado,* 223 P.3d 653, 655 (Ariz. 2010) ("In current usage, the phrase 'subject matter jurisdiction' refers to a court's statutory or constitutional power to hear and determine a particular type of case. Jurisdiction in this sense cannot be conferred by the consent of the parties and a court that lacks subject matter jurisdiction cannot adjudicate the action. [State v.] *Smith,* however, employed a more expansive concept of 'subject matter jurisdiction.' . . . [State v.] *Smith's* remarks about jurisdiction must have referred instead to the superior court's inability to enter a valid judgment of conviction based upon a defective information. But concluding that a court cannot enter a valid judgment because of a procedural error does not mean that the court lacks subject matter jurisdiction." (citing *State v. Smith,* 189 P.2d 205 (Ariz. 1948), abrogated by *Maldonado,* 223 P.3d)). Our own case law offers some guidance as to how this court has interpreted the difference between "appellate jurisdiction" and "subject matter jurisdiction."

In general, when we refer to "appellate jurisdiction," we have spoken in terms of the authority established in the Utah Constitution or by statute of the appellate court to review the decision of a lower court. *See State v. Smith,* 2015 UT 52, ¶ 3, 374 P.3d 1 ("The framework for allocation of appellate jurisdiction between this court and the court of appeals is set forth in, respectively sections 78A-3-102 and 78A-4-103 of the Utah Code."); *Pledger v. Gillespie,* 1999 UT 54, ¶ 17, 982 P.2d 572 ("In its sua sponte decision, however, the court of appeals overlooked Cigna's proffered basis for appellate jurisdiction,

(continued . . .)

(continued . . .)

i.e., the Utah Arbitration Act, which states that 'an appeal may be taken . . . from *any court order:* (1) denying a motion to compel arbitration.' (alteration in original) (citing UTAH CODE ANN. § 78-31a-19(1) (1996)); *Holden v. N L Indus., Inc.*, 629 P.2d 428, 431 (Utah 1981) ("This Court has never defined the term 'appellate jurisdiction' as it is used in Article VIII, Section 4 of the Utah Constitution, but there are ample authorities defining the term as used in other constitutions. . . . 'Appellate jurisdiction' obviously connotes review of the action of an inferior court. 'Inferior court' has been appropriately defined as 'any court subordinate to the chief appellate tribunal in the particular judicial system.' (citations omitted)); *Peatross v. Bd. of Comm'rs of Salt Lake Cty.*, 555 P.2d 281, 284 (Utah 1976) ("The standard rule is that appellate jurisdiction is the authority to review the actions or judgments of an inferior tribunal upon the record made in that tribunal, and to affirm, modify or reverse such action or judgment."); *State v. Johnson*, 114 P.2d 1034, 1037 (Utah 1941), *overruled on other grounds by Boyer v. Larson*, 433 P.2d 1015 (Utah 1967) ("Appellate jurisdiction is the jurisdiction to review the decision or judgment of an inferior tribunal, upon the record made in that tribunal, and to affirm, reverse or modify such decision; judgment, or decree. . . . In the first place, it may not be without use to ascertain what is here meant by appellate jurisdiction, and what is the mode in which it may be exercised. The essential criterion of appellate jurisdiction is, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised."). Only recently has that construction of "appellate jurisdiction" been altered to include substantive defects in an appeal. *See Matter of Adoption of B.B.*, 2017 UT 59, ¶ 106, ___ P.3d ___ ("An order not identified in the notice of appeal falls beyond our appellate jurisdiction. And the failure to identify an order is a non-waivable (jurisdictional) defect."); *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 28, 266 P.3d 702 (holding that subject matter jurisdiction can be limited by statute); *Johnson v. Johnson*, 2010 UT 28, ¶ 8, 234 P.3d 1100 (defining subject matter jurisdiction in terms of the authority granted by law).

On the other hand, "subject matter jurisdiction" has been used when determining whether a court has jurisdiction to reach the merits of a particular case because of procedural defects even though

(continued . . .)

¶36 The district court erred as a matter of law in treating the rule 59 motion as timely because the court's only option according to the procedural rules was to deny the motion because it was untimely. We therefore vacate the October 27, 2015 order of the district court. Because the rule 59 motion was untimely filed, the deadline to file a notice of appeal was not tolled, and the 30-day window to file an appeal began to run on April 6, 2015, the date of the district court's judgment and order. The notice of appeal filed on November 25, 2015, was therefore also untimely and does not establish jurisdiction.

## IV. MOTHER IS AWARDED REASONABLE ATTORNEY FEES AND COSTS ON APPEAL

¶37 In *Smith v. Smith*, the court of appeals noted that "[i]n domestic cases, when a party has prevailed below and the trial court has awarded attorney fees, we will generally award the same party attorney fees when he or she prevails on appeal." 1999 UT App 370, ¶ 18, 995 P.2d 14, *rehearing denied* (Utah Ct. App. 2000), *cert. denied,* 4 P.3d 1289 (Utah 2000); *see also Gray v. Gray*, 2001 UT App 274, 2001 WL 1097716 (Utah Ct. App. 2001) (awarding attorney fees to party who was awarded attorney fees in the district court and prevailed on appeal); *Rosendahl v. Rosendahl,* 876 P.2d 870, 875 (Utah Ct. App. 1994), *cert. denied,* 883 P.2d 1359 (Utah 1994) (same); *Moore v. Moore,* 872 P.2d 1054, 1056 (Utah Ct. App. 1994) (same).

---

(continued . . .)

it has appellate jurisdiction to review the appeal under statute. This is a determination that courts should consider at the outset of every case. *See In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 36 ("[C]ourts have an independent obligation to . . . . raise and decide jurisdictional questions that the parties either overlook or elect not to press." (omission in original) (citation omitted)). *See also Gudmondson v. Del Ozone*, 2010 UT 33, ¶¶ 11–17, 232 P.3d 1059 (holding that timeliness of filing the appeal was determinative of whether this court has subject matter jurisdiction over the appeal).

The foregoing discussion is intended for context because it does not have an impact on the issues that must be decided in this case. Because there is no doubt that the timeliness of an appeal raises jurisdictional questions, we need not determine whether this is a matter of "appellate jurisdiction" or "subject matter jurisdiction." "It is axiomatic in this jurisdiction that failure to timely perfect an appeal is a jurisdictional failure requiring dismissal of the appeal." *Workers Comp. Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶ 10, 266 P.3d 792 (citation omitted).

¶38 The juvenile court found that

> Mother substantially prevailed on all of her claims and defenses to the abovementioned litigation tactics, as well as the underlying actions. The attorney fees incurred were reasonable and necessary to protect the Mother's custody and visitation rights. The Mother has substantially prevailed on her claims that the Father did not abide by the terms of their Decree of Divorce and Amended Decree of Divorce, and is therefore entitled to compensation for legal expenses from the Father.

Consequently, the juvenile court awarded Mother attorney fees and costs incurred in "establish[ing]" and "enforce[ing] an order of custody, parent-time, child support, alimony, or division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense." UTAH CODE § 30-3-3(1)–(2). Additionally, the juvenile court awarded Mother attorney fees and costs pursuant to the provision in the Decree of Divorce, stating that "[i]n the event either party fails to perform his or her obligations under the Decree of Divorce, such person shall pay all costs and attorney fees of the other party incurred in enforcing the terms of the Decree of Divorce."

¶39 As mandated by Utah Rule of Appellate Procedure 24(a)(9), Mother, "seeking to recover attorney's fees incurred on appeal," has "state[d] the request explicitly and set forth the legal basis for such an award." As Mother has prevailed in the domestic case in the juvenile court and the district court below and has prevailed on appeal, we award attorney fees and costs.

## CONCLUSION

¶40 The *e-Filing Guide* establishes the filing date and time of documents filed in Utah courts. Father's rule 59(e) motion was untimely. Father's timely filed memorandum is not a substitute for an untimely filed motion. Father's untimely motion was barred under rule 6(b)(2). Consequently, the district court did not have the authority to rule on the untimely motion, and we vacate the district court's October 27th order denying Father's rule 59 motion. This leaves the April 6, 2015 judgment and order as the operative order.

¶41 An untimely motion under rule 59(e) does not extend the time for filing a notice of appeal. Thus, Father's notice of appeal filed November 25, 2015, is also untimely, and this court lacks jurisdiction to rule on the merits of this case. Mother, as the prevailing party on appeal, is awarded reasonable attorney fees and costs on appeal. We

remand this case to the district court for a determination of those fees and costs.

———————